**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DONNA L. MILLER,

     Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

     Defendant-Appellee.

No. 05-6248
(D.C. No. CIV-04-906-L)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **EBEL**, and **MURPHY**, Circuit Judges.

Donna L. Miller appeals from an order affirming the Commissioner's

decision that she is not entitled to social security disability insurance benefits.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

**Background**

The lengthy history of Ms. Miller's disability claim begins with her October 24, 1996 application, in which she alleged disability since July 1, 1993. Ms. Miller, whose insured status expired September 30, 1995, listed her disabling condition as "nervous breakdown (1988-89)." Aplt. App. at 60. Accordingly, the evidence relevant to her claim pertains to her mental impairment after the alleged onset date and before the expiration of her insured status. *See Henrie v. U.S. Dep't of Health & Human Serv.*, 13 F.3d 359, 360 (10th Cir. 1993).

Ms. Miller's medical records indicate that she was hospitalized from February 7 to March 15, 1989, for a single episode of major depression with psychotic features, apparently precipitated by marital and family-related stressors. She was discharged in improved condition with instructions to continue her psychiatric care and take her medication. Ms. Miller did not return to her previous job as a dishwasher in a restaurant, but she worked from July to September 1990 in a nursing home and, in 1993, was a self-employed cattle salesperson. From her 1989 discharge to her 1996 disability application,

Ms. Miller received medical care for various physical problems, but was not seen again by a mental-health provider.[1]

In her social security case, an Administrative Law Judge (ALJ) held a hearing on May 7, 1998. A psychiatrist testified that the lack of "anything ongoing, recent" made an evaluation difficult and that she could determine whether Ms. Miller met a listing more objectively if the Commissioner ordered psychological testing. Aplt. App. at 215-16. On August 24, 1998, a psychologist evaluated Ms. Miller at the request of the Commissioner. The psychologist's report shows a diagnosis of recurrent major depression, with possible psychotic features; chronic pain syndrome; and anxiety disorder, primarily represented by social phobia. The psychologist also completed a mental residual functional capacity (RFC) assessment form, noting several moderate and marked limitations in her ability to perform work-related activities. Neither the report nor the RFC assessment indicated a continuity between the 1989 psychotic break and Ms. Miller's condition on the date of the evaluation.

Shortly afterwards, the ALJ denied Ms. Miller's application for benefits. Relying heavily on the psychologist's report of the consultative examination, the

_____

[1] On appeal, Ms. Miller emphasizes the record of an emergency room visit for abdominal pain in June 1996 contains a "diagnostic impression of "chest pain, poss[ible] anxiety." Aplt. App. at 133. This notation does not constitute a linkage between her episode of depression in 1989 and her later claim of a continuing mental problem.

ALJ found that Ms. Miller had a severe depressive and anxiety disorder, but that she had the RFC to perform the physical and mental demands of her past relevant work as a dishwasher. The Commissioner, however, had not provided the report to Ms. Miller. Upon judicial review, the district court reversed the denial of benefits, holding that Ms. Miller's due process rights were violated by the Commissioner's failure to give her notice of the post-hearing report or a meaningful opportunity to rebut this evidence.

A second ALJ then held a hearing on remand. Douglas Brady, a clinical consultative psychologist, testified that a fair inference from the medical record was that Ms. Miller needed intensive treatment in 1997. He also commented on the lack of records of psychological or psychiatric treatment during the time period relevant to her claim. Ms. Miller testified about her condition from 1997 through the date of the hearing.

In a decision dated July 26, 2002, the second ALJ found that Ms. Miller "had a mental difficulty that did significantly restrict her ability to do basic work activities," that she had the RFC for jobs with low to moderate stress, and that her past relevant work as a dishwasher was within this RFC. *Id.* at 269. Based on his findings, the ALJ concluded at step two of the sequential evaluation process that

Ms. Miller had a significant impairment, but denied benefits at step four because she could perform her past relevant work.[2]

Ms. Miller appealed the denial and, in 2003, the Appeals Council determined that the second ALJ's decision was unsupported and insufficient. It therefore remanded the case, with specific directions to the ALJ to develop the record on remand by: (1) updating the record with reports from health care providers; (2) preparing a "new, longitudinal" RFC determination; (3) holding a supplemental hearing, with testimony from a vocational expert; (4) reconsidering claimant's testimony; and (5) taking action necessary to complete the administrative record before issuing a new decision. *Id.* at 309.

_____

[2]    Step one [of the process] requires a claimant to establish she is not engaged in substantial gainful activity. Step two requires the claimant to establish she has a medically severe impairment or combination of impairments. Step three asks whether any medically severe impairment, alone or in combination with other impairments, is equivalent to any of a number of listed impairments so severe as to preclude substantial gainful employment. If listed, the impairment is conclusively presumed disabling. If unlisted, the claimant must establish at step four that her impairment prevents her from performing work she has previously performed. If the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience.

*Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (internal quotation marks and citations omitted).

A third ALJ was assigned to the case. He opened a hearing, informing claimant he was not bound by any prior decision in the case. The transcript shows that both the ALJ and Ms. Miller's attorney were focused on extending Ms. Miller's period of insurance eligibility and exploring the feasibility of Supplemental Security Income benefits. Concerning the medical records, the ALJ noted that the record didn't "have a lot of medical evidence up until the date last insured" and inquired if there would "be substantial medical evidence . . . from '89 up to '94." Aplt. App. at 497-98. Ms. Miller's attorney responded that there was "a gap from – '89 forward. . . . That's basically when her medical drops off the chart." *Id.* at 497. He also stated that his client "understands the problems. That's where we're stuck. We go around in this case, around and around." *Id.* at 498. The attorney did not suggest that any additional evidence would be appropriate. A vocational expert was present, but after holding the discussion with Ms. Miller's attorney, the ALJ closed the hearing without calling for vocational testimony.

The ALJ continued the proceedings for sixty days. No additional evidence relevant to Ms. Miller's mental condition was produced after the hearing. Ms. Miller's attorney submitted a letter to the ALJ which stated: "Quite frankly, I have nothing further to offer on this claim and have so explained this to the claimant. As you can see, she is also at her end and simply requests that a

-6-

decision from your office be issued." *Id.* at 335. The ALJ then issued the decision which is the subject of this appeal.

In making his decision, the third ALJ reviewed essentially the same record available to the second ALJ. At step two of the evaluation process, the ALJ acknowledged that the record indicated that Ms. Miller had a severe mental impairment in 1989 and also at the time of her 1998 examination. He concluded, however, that there was no evidence concerning an impairment in 1995. On November 26, 2003, the ALJ denied Ms. Miller's application on the ground that she was not significantly limited in her ability to perform basic work-related activities at the relevant time and therefore not severely impaired.

On administrative appeal, the Appeals Council found that "the Administrative Law Judge complied with the remand order" and declined to assume jurisdiction. *Id*. at 235. The district court affirmed the Commissioner's decision and this appeal followed.

## Legal Discussion

**Compliance with remand order**

Ms. Miller's primary argument on appeal is that the ALJ's actions were inconsistent with the Appeals Council remand order. Ms. Miller does not assert that the ALJ's de novo sequential evaluation caused surprise, confusion, or prejudice. And she does not describe evidence that she would have presented if

-7-

she had been given formal, explicit notice that the ALJ could revisit the earlier step-two determination. Instead, she attempts to make a legal argument by claiming that (1) in light of prior proceedings, the ALJ was precluded from making a step-two determination that she did not have a severe impairment; and (2) in accordance with the remand order, the ALJ should have obtained additional testimony from medical and vocational experts and conducted an analysis of the previous testimony from medical experts.

Social Security regulations provide that, in the event the Appeals Council orders a remand, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). Preclusion principles, however, do not "bind the ALJ to his earlier decision. To hold otherwise would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate." *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir. 1987). This court has "decline[d] to constrain the ALJ in a manner not mandated by the regulations." *Id.* *See also Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004) (stating that "[i]t was certainly within the ALJ's province, upon reexamining [claimant's] record [after Appeals Council remand], to revise his RFC category"); *Houston v. Sullivan*, 895 F.2d 1012, 1015 (5th Cir. 1989) ("Once the case was remanded to

the ALJ to gather more information about the extent of [claimant's] disability, the ALJ was free to reevaluate the facts.").[3]

Ms. Miller was advised of this rule at her hearing, when the ALJ announced that he was not bound by a prior decision. She was also warned that the ALJ considered the medical evidence lacking. Rather than making an effort to produce additional evidence or suggest a cure for the obvious gap in the record, Ms. Miller's attorney simply conceded that the absence of evidence was problematic. On the facts of this case, the ALJ's change in the step two determination, standing alone, cannot constitute error.

Ms. Miller also argues that the order denying benefits should be reversed because the ALJ's actions were inconsistent with the Appeals Council remand order. Specifically, she asserts that the ALJ disregarded instructions to obtain additional testimony from medical and vocational experts. The order, however, did not address the second ALJ's step-two findings. In context, the instructions

---

[3]    Claimant's cited authority does not detract from the rule this court established in *Campbell.* The cases relied upon by Ms. Miller generally involve a remand from a *court*, not an administration agency. They discuss and apply the law of the case doctrine, which requires the administrative agency on remand to conform its further proceedings to the judicial decision. *Brachtel v. Apfel,* 132 F.3d 417, 420 (8th Cir. 1997); *Ruiz v. Apfel*, 24 F. Supp. 2d 1045, 1050 (C.D. Cal. 1998); *Richardson v. Apfel*, 9 F. Supp. 2d 666, 673 (N.D. Tex. 1998); *Geracitano v. Callahan*, 979 F. Supp. 952, 957 (W.D.N.Y. 1997). *See also Schonewolf v. Callahan*, 972 F. Supp. 277, 289 (D.N.J. 1997) (noting the ALJ's failure to follow the Appeals Council remand order, but independently reviewing the adequacy of the ALJ's findings).

were designed to correct "errors of law affect[ing] the ALJ's residual functional capacity findings," made at step four. Aplt. App. at 307. In response to Ms. Miller's final administrative appeal, the Appeals Council found that the third ALJ complied with its remand order. Under these circumstances, it is appropriate to examine the Commissioner's final decision under our usual standards, rather than focusing on conformance with the particular terms of the remand order. *Cf.* 42 U.S.C. § 405(g) (stating that this court is limited to review of the Commissioner's final decision); 20 C.F.R. § 404.955(a) (stating that when the Appeals Council grants a claimant's request for review, the ALJ's decision does not become final).

**Substantial evidence and conformity with legal standards**

This court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. *Decker v. Chater*, 86 F.3d 953, 954 (10th Cir. 1996).

Ms. Miller challenges the Commissioner's determination that she did not have a severe impairment at the relevant time. At step two, the claimant must prove that she has a medically severe impairment or combination of impairments that significantly limits her ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521(a). "The step two severity determination is based on medical factors alone. . . ." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003). Although step two requires only a "de minimis" showing of impairment, a "claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (citations omitted). To meet this burden, a claimant must furnish medical and other evidence to support her claim that the impairment prevents her from engaging in substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 145-46 & n.5 (1987).

Ms. Miller asserts that she carried her burden or, alternatively, she could have done so if the ALJ had developed the record with the testimony of an additional medical expert. The record contains no evidence that Ms. Miller was significantly impaired at the time her insured status expired. Thus we are brought to the question of whether the third ALJ's failure to obtain retrospective medical testimony opinion amounts to a breach of his duty to develop the record.

The Commissioner "has broad latitude in ordering consultative examinations," but "where there is a direct conflict in the medical evidence requiring resolution or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citations omitted). A "retrospective medical assessment of a patient may be probative when based upon clinically acceptable diagnostic techniques." *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (concerning a treating physician's retrospective assessment).

The record before the ALJ, however, does not indicate that this exercise would have revealed "any useful information or that the physicians were willing to undertake such assessments." *Id.* Though Ms. Miller argues that she was entitled to the testimony of a medical expert, she does not explain how a diagnosis undertaken ten years after the alleged onset date would have yielded any probative evidence. Further, she conceded that she had nothing further to offer and that the time had come to seek a decision. *Cf. Hawkins*, 113 F.3d at 1167-68 (stating that, in the absence of a request from counsel, this court does not ordinarily "impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record").

The ALJ already had Ms. Miller's complete medical history, testimony from the two previous hearings, and the 1998 evaluation. Contrary to her contention, the ALJ adequately evaluated and discussed the record, including the 1998 evaluation. Once he decided that the record did not demonstrate a severe impairment, the ALJ acted within the "broad latitude" afforded the agency in declining to obtain further medical testimony. *See Hawkins*, 113 F.3d at 1166. For similar reasons, the ALJ was not required to take the testimony of a vocational expert before making his step two determination.

According Ms. Miller's social security claim careful consideration at every administrative and judicial level has led to unfortunate delay. We now conclude, however, that the Commissioner's final decision followed appropriate legal standards and was supported by substantial evidence. AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge